**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| SAMANTHIA CARDENAS,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>Defendant. | CASE NO. 3:25-cv-00930<br><br>MAGISTRATE JUDGE AMANDA M. KNAPP<br><br>**MEMORANDUM OPINION AND ORDER** |

Plaintiff Samanthia Cardenas seeks judicial review of the final decision of Defendant Commissioner of Social Security denying her application for Supplemental Security Income ("SSI"). (ECF Doc. 1; ECF Doc. 9, p. 4.) This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This matter is before the undersigned by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF Doc. 13.) For the reasons set forth below, the Court **AFFIRMS** the Commissioner's final decision.

## I. Procedural History

Plaintiff filed her SSI application on March 9, 2022, alleging an onset date of September 20, 2001. (Tr. 29, 75.) She alleged disability due to bipolar disorder, anxiety, depression, fatty acid, hypothyroid, and eczema. (Tr. 102, 108.) Ms. Cardenas's applications were denied initially and upon reconsideration (Tr. 98-102, 105-08), and she requested a hearing (Tr. 111). After conducting a hearing on Ms. Cardenas's claims (Tr. 49-74), an Administrative Law Judge ("ALJ") issued a decision denying her application on September 11, 2024 (Tr. 26-48). On December 20, 2024, the Appeals Council denied Ms. Cardenas's request to review the ALJ

decision, making the September 11, 2024 decision the final decision of the Commissioner. (Tr. 13-18.) On April 10, 2025, the Appeals Council granted a request by Ms. Cardenas to extend the time to file a civil action. (Tr. 1-3.)

Ms. Cardenas filed her Complaint on May 8, 2025, challenging the Commissioner's final decision denying her disability benefits. (ECF Doc. 1.) The matter is fully briefed. (ECF Docs. 9, 11 & 12.) Ms. Cardenas raises one assignment of error:

> The Commissioner erred as a matter of law by improperly evaluating the medical opinion of the psychological consultative examiner, including by failing to incorporate limitations from medical opinions the ALJ found to be persuasive.

(ECF Doc. 9, p. 2.)

## II. Evidence

### A. Personal, Educational, and Vocational Evidence

Ms. Cardenas was born in 1990 and was 31 years old on the date the application was filed, making her a younger individual under Social Security regulations. (Tr. 42.) She has at least a high school education (*id.*) and has not worked since March 9, 2022 (Tr. 31).

### B. Medical Evidence

#### 1. Relevant Treatment History[1]

On September 7, 2022, Ms. Cardenas presented to Tropical Texas Behavioral Health ("TTBH") as a walk-in on her primary care physician's recommendation. (Tr. 385-90.) She reported being "very down and depressed" with no desire or strength to get out of bed. (Tr. 385.) She reported receiving medication for depression and anxiety from her primary care physician. (*Id.*) She said she usually stayed at home; and when she tried to leave, she was overwhelmed

[1] While Ms. Cardenas alleged and the ALJ found physical and mental health impairments (Tr. 32, 102, 108), her argument is based on her mental health impairments (ECF Doc. 9). The Court's summary is generally limited to the evidence cited in the parties' briefs that is relevant to the legal and factual issues before the Court.

with anxiety and ended up returning home. (*Id.*) She was unhappy with herself and felt worthless. (*Id.*) She denied suicidal or homicidal thoughts, but reported occasional auditory hallucinations, loss of appetite, and problems sleeping. (*Id.*) Her appearance was "poor." (Tr. 389.) She was cooperative but anxious, with average intellect but slow thought processing. (*Id.*)

On September 14, 2022, Ms. Cardenas presented to Maria Portillo, LPC, at TTBH for a diagnostic evaluation. (Tr. 337-44.) On examination, she was cooperative but depressed and anxious. (Tr. 337, 338.) Her speech was logical and coherent, with no evidence of disorganized or tangential process. (Tr. 338.) She denied current hallucinations or suicidal/homicidal ideation. (*Id.*) She reported current prescriptions for Buspar 10 mg and Venlafaxine ER 150 mg, prescribed by her family doctor. (Tr. 337.) She reported a past diagnosis of depression and anxiety by a psychologist but said she did not seek psychiatric treatment because she was afraid her "'children would be removed' from her when they were little." (Tr. 338.)

On September 23, 2022, Ms. Cardenas presented to Brianna Garcia, QMHPCS, at TTBH for a behavioral health assessment. (Tr. 345-56.) On examination, she was neat and clean with good hygiene. (Tr. 349, 353.) She was calm, verbal, and cooperative. (Tr. 350, 353.) Her thought process was logical, and she had good insight and judgment and average intellect. (*Id.*) She was living with her husband of fourteen years and her two children. (Tr. 348.) She did not interact socially and stayed at home because she was afraid of being judged by others. (Tr. 350.)

On October 6, 2022, Ms. Cardenas presented to Dr. Carlos Alicea, D.O., for a psychiatric evaluation. (Tr. 358, 365-80.) On examination, she was clean and neatly dressed. (Tr. 371.) She was depressed but cooperative with an appropriate/full affect. (*Id.*) Her speech was soft, normal, relaxed, and spontaneous. (*Id.*) Her thought content/process was goal directed, and she was alert and oriented. (*Id.*) Her insight was fair, her judgment was impaired, and her memory

and concentration were decreased. (Tr. 372.) She was diagnosed with major depressive disorder and panic disorder. (Tr. 358, 375.)

On October 20, 2022, Ms. Cardenas presented to Mineesha Morrison, Licensed Vocational Nurse, for a medication management nursing visit at TTBH. (Tr. 357-60.) She had been prescribed duloxetine (Cymbalta) for depression and anxiety and hydroxyzine (Vistaril) for breakthrough anxiety. (*Id.*) She reported she had been stable but had not started Cymbalta due to insurance not covering the medication. (Tr. 358.) On examination, Ms. Cardenas appeared clean and was dressed neatly. (*Id.*) She was euthymic and cooperative but anxious. (Tr. 357.) Her speech was soft, normal, relaxed, and spontaneous. (*Id.*) She was alert and oriented with goal-oriented thought content/process. (*Id.*) She reported that her depression was improved and denied suicidal thoughts, plan, or intent, but she also reported crying daily and isolating. (*Id.*) She was referred to CBT for depression and it was noted that she would benefit from trauma focused therapy. (*Id.*) She was instructed to continue with nurse visits for medication monitoring and to follow up with Dr. Alicea in four weeks. (Tr. 359.)

Plaintiff continued treatment at TTBH from November 2022 until August 2023. (Tr. 562-65, 565-68, 569-81, 582-90, 591-600, 601-11, 612-23, 624-28.) During that period, some of Ms. Cardenas's examination findings were abnormal. For instance, during a visit with Dr. Alicea on November 3, 2022, she was clean, neatly dressed, euthymic, and cooperative with soft and normal speech, appropriate/full range affect, and goal-directed thought content/process. (Tr. 583.) But she was also anxious with impaired judgment, fair insight, and decreased memory. (Tr. 583-84.) During a June 22, 2023 appointment, she was cooperative, calm, and non-agitated with good eye contact, clear speech, wide and normal range and appropriate affect, logical and goal-directed thought processes, good insight, adequate judgment, intact memory, and adequate

attention and concentration. (Tr. 567.) But she was also depressed, anxious, and irritable. (*Id.*) During an August 2, 2023, appointment, Ms. Cardenas presented as cooperative, calm, and non-agitated with good eye contact, clear speech, logical and goal-directed thought processes, good insight, adequate judgment, intact memory, adequate attention and concentration, and average intellect. (Tr. 564.) But she had a restricted affect and depressed mood. (*Id.*)

On November 7, 2023, after relocating from Texas to Ohio and while in the midst of a divorce, Ms. Cardenas presented at Firelands Regional Medical Center with complaints of increased depression and suicidal ideation. (Tr. 631, 638.) She was admitted and discharged on November 10, 2023. (Tr. 631.) Her diagnosis at discharge was major depressive disorder. (*Id.*) At discharge, she was calm, cooperative, and engaged with good eye contact and normal psychomotor activity and speech. (Tr. 634.) Her mood was "okay" and her affect was reactive and mood-congruent. (Tr. 635.) Her concentration was grossly intact. (*Id.*) She did not appear to be responding to internal stimuli and there was no loosening of associations. (*Id.*) Her thought process was linear, logical, and goal-oriented and her memory was not impaired. (*Id.*) Her insight and judgment were fair and she interacted appropriately with the interviewer and staff. (*Id.*) Her condition at discharge was "stable." (*Id.*)

During non-mental health treatment appointments, Ms. Cardenas's memory was intact; her insight, judgment, mood, and speech were normal; and she did not present with anxiety or depression. (*See e.g.*, Tr. 407, 422, 432, 436, 458, 474, 529, 532.)

**2. Opinion Evidence**

On October 31, 2022, Ms. Cardenas presented to Mario Tovar, Ph.D., for a consultative psychological examination. (Tr. 398-403.) Her chief complaints were "[d]epression, anxiety, and bipolar" disorder. (Tr. 399.) On examination, Ms. Cardenas was cooperative with a positive

attitude, but Dr. Tovar noted some distress as she appeared ill. (Tr. 400.) She was congested and coughing during the interview, but was able to answer all questions. (*Id.*) She was casually dressed and appeared disheveled. (*Id.*) She did not appear lethargic or restless and Dr. Tovar did not observe psychomotor agitation or retardation. (Tr. 401.) There was no evidence of looseness of associations, flight of ideas, or circumstantiality. (*Id.*) She denied hallucinations and suicidal and homicidal ideation. (*Id.*) Her affect appeared ill and constricted and was congruent with her mood. (*Id.*) She did not appear confused and was oriented to time, place, person, and situation. (*Id.*) Her level of intelligence appeared to be below average and her fund of information appeared adequate. (*Id.*) She was able to: name 3 out of 3 presidents from the United States from any time; recall 3 out of 3 words after four minutes; repeat series of 3 and 4-digit numbers forward but not backward; and remember her birthday. (*Id.*) She was able to repeat 3 out of 3 words, but she needed two trials to do so. (Tr. 402.) She could not spell the word WORLD forward or backward. (*Id.*) She was able to add 3+3 and 6+3, but she could not add 7+7 or subtract 10-3. (*Id.*) Her judgment appeared poor and her insight was fair. (*Id.*) She reported symptoms of depression, anxiety, and mood instability. (*Id.*) She said she had been compliant with her medication until she got physically sick, but she planned to start her medication again once she felt better physically. (*Id.*)

Dr. Tovar diagnosed: major depressive disorder, recurrent episode, severe; persistent depressive disorder; panic disorder; and intermittent explosive disorder. (*Id.*) He opined that her prognosis was "guarded." (Tr. 403.) He opined as follows regarding her functional capacity:

> Samanthia can understand, remember, and apply information. She has the abilities to learn, recall and use basic information to perform work activities. She can follow one-two steps instructions to carry out a task. She has a deficit in the ability to make work related decisions. She can focus her attention on work activities at an appropriate and consistent pace. She is unable to relate to and work with supervisors and co-workers. Samanthia's mental disorder would prevent her from

> regulating her emotions, controlling her behavior, and maintaining her well-being in a work setting.

(*Id.*)

On January 2, 2023, state agency psychological consultant Julie Cohen, Ph.D., completed a Psychiatric Review Technique ("PRT") (Tr. 79-80) and Mental RFC Assessment (Tr. 81-82). In the PRT, Dr. Cohen opined that Ms. Cardenas had mild limitations in her ability to understand, remember, or apply information, and moderate limitations in her ability to: interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. (Tr. 79.) In the Mental RFC Assessment, Dr. Cohen opined that Ms. Cardenas was maximally able to: understand, remember, and carry out only simple instructions, make simple decisions, and attend and concentrate for extended periods; and she could interact adequately with coworkers and supervisors and respond appropriately to changes in a routine work setting. (Tr. 82.)

Upon reconsideration, state agency psychological consultant Jonathan A, Ph.D., found on December 1, 2023, that there was insufficient evidence to determine the claim. (Tr. 90.)

**C. Hearing Testimony**

At a hearing on June 13, 2024, Ms. Cardenas testified in response to questions from the ALJ and her non-attorney representative. (Tr. 52, 56-70.) A Vocational Expert ("VE") also testified. (Tr. 71-73.) The VE testified that a hypothetical individual of Plaintiff's age, education, and work experience, with the functional limitations described in the ALJ's RFC determination (Tr. 35, 71), could perform representative positions in the national economy, including cafeteria attendant, outside deliverer, and router, all classified by the VE as light, SVP 2 positions (Tr. 71-72).

## III. Standard for Disability

Under the Social Security Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).

To make a determination of disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations, summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If the claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if the claimant's impairment prevents him from doing past relevant work. If the claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If the claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC and vocational factors to perform other work available in the national economy. *Id.*

## IV. Law & Analysis

### A. Standard of Review

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) ("Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence.").

When assessing whether there is substantial evidence to support the ALJ's decision, the Court may consider evidence not referenced by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989)). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "'The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the

courts.'" *Blakley*, 581 F.3d at 406 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if substantial evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Although an ALJ decision may be supported by substantial evidence, the Sixth Circuit has explained that the "'decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-547 (6th Cir. 2004))). A decision will also not be upheld where the Commissioner's reasoning does not "build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

### B. Sole Assignment of Error: The ALJ Complied with SSR 96-8p and Built a Logical Bridge Between the Evidence and the Result When She Evaluated the Opinion of Consultative Psychological Examiner Mario Tovar, Ph.D.

In her sole assignment of error, Ms. Cardenas argues that the ALJ's evaluation of consultative psychological examiner Dr. Tovar's medical opinion was insufficient because the ALJ "inherently adopted" Dr. Tovar's finding that Ms. Cardenas was limited to "1-2 step instructions" but then "did not include a 1-2 step limitation in the RFC." (ECF Doc. 9, p. 10.) More specifically, she asserts that the ALJ erred when she: (1) mischaracterized Dr. Tovar's findings by implying Dr. Tovar limited Ms. Cardenas to "simple" instead of "1-2 step"

instructions; (2) failed to explain why she did not adopt a limitation to 1-2 step instructions; and (3) presented a "legally insufficient hypothetical" to the vocational expert because "the hypothetical said nothing about Plaintiff's 1-2 step limitations." (*Id.* at pp. 10-13.)

In response, the Commissioner argues "based on a reading of the decision as a whole" that "the ALJ's intent was to find that Plaintiff was limited to simple instructions and that Plaintiff did not have limitations beyond that" or stated differently, "the decision as a whole indicates that the ALJ did not accept the limitation to 1-2 step tasks even if the ALJ did not expressly state that [s]he rejected that limitation." (ECF Doc. 11, p. 8.)

Here, the ALJ evaluated Dr. Tovar's opinion as follows:

> As noted, the claimant underwent a consultative evaluation in October 2022, conducted by Mario Tovar, Ph.D. Dr. Tovar opined the claimant could understand, remember, and apply information; has the ability to learn, recall, and use basic information to perform work activities; follow 1-2 step instructions to carry out a task; and focus her attention on work activities at an appropriate and consistent pace. However, Dr. Tovar also opined the claimant had a deficit in the ability to make work-related decisions and was unable to relate to and work with supervisors and coworkers, noting her mental disorder would prevent her from regulating her emotions, controlling her behavior, and maintaining her well-being in a work setting. A finding that the clamant is limited to simple instructions is supported by the accompanying examination, which noted difficulty repeating a series of numbers backwards and difficulty repeating words, spelling, and performing some simple math. It is also consistent with and supported by her reporting of receiving special education services. A finding that the claimant has limitations in decision-making is also supported by and consistent with the claimant's reporting symptoms as well as limited judgment and insight during the evaluation. These limitations are also consistent with the complete relevant evidence of record including treatment notes and other mental status examination findings. However, the examination is not supportive of an inability to relate to others or inability to regulate emotions, control behavior, and maintain well-being, as the claimant reported getting along with family and having some friends, and also notes she is able to prepare basic meals, manage money, and perform basic activities of daily living with assistance needed due to physical concerns. In addition, the claimant was noted to have positive attitude, was able to establish rapport with the examiner, was able to answer questions, and had intact thought process and thought content. Moreover, the complete evidence of record, including other mental status examination findings and treatment notes, is more consistent with the ability to interact with

> others on an occasional basis and handle occasional changes in work setting. As such, this opinion is only partially persuasive.

(Tr. 41 (emphasis added) (internal citations omitted).) Notably, this analysis of Dr. Tovar's opinion was not the first time the ALJ discussed "simple instructions" in her decision. After summarizing Ms. Cardenas's mental health records (Tr. 38-39), the ALJ had explained:

> Given the evidence of record, the undersigned has further limited the claimant to only simple instructions and simple decisions, occasional interaction with coworkers, supervisors, and the public, and occasional changes in the work routine, but finds no further mental limitations supported by the evidence of record.

(Tr. 39 (emphasis added).) The ALJ had also discussed and found "somewhat persuasive" the medical opinion of state agency psychological consultant July Cohen, Ph.D., who opined that Ms. Cardenas "was maximally able to understand, remember, and carry out only simple instructions" and "make simple decisions." (Tr. 40 (citing Tr. 82) (emphasis added).) In analyzing Dr. Cohen's opinion, the ALJ concluded that "the complete evidence of record, including treatment notes, mental status examination findings, and hospitalization records, is consistent the same functional limitations as those noted by Dr. Cohen and further, is consistent with a limitation to simple instructions" and "simple decisions[.]" (Tr. 41 (emphasis added).)

Turning to Ms. Cardenas's first argument—that the ALJ's analysis contained "a clear mischaracterization of Dr. Tovar's findings" because "Dr. Tovar did not opine that the Plaintiff was limited to simple instructions"—the Court finds this argument lacks merit. The ALJ clearly acknowledged Dr. Tovar's opinion that Ms. Cardenas could "follow 1-2 step instructions to carry out a task" before concluding that a limitation to "simple instructions" was supported by and consistent with Dr. Tovar's clinical examination findings, Ms. Cardenas's receipt of special education services, and "the complete relevant evidence of record including treatment notes and other mental status examination findings." (Tr. 41 (citations omitted).) The ALJ did not

mischaracterize Dr. Tovar's medical opinion findings when she acknowledged Dr. Tovar's findings regarding "1-2 step instructions" before adopting a limitation to "simple instructions."

The Court turns next to Ms. Cardenas's argument that the ALJ erred because she "did not explain why she deviated from Dr. Tovar's finding that the Plaintiff was limited to 1-2 step instructions and instead included a limitation to simple instructions." (ECF Doc. 9, p. 12.) While the parties agree that the ALJ was not required to adopt Dr. Tovar's medical opinion "verbatim" or "adopt [Dr. Tovar]'s limitations wholesale,"[2] *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015), there is also no dispute that Social Security Ruling ("SSR") 96-8p required the ALJ to consider all medical opinions in her RFC assessment and, where her RFC "conflict[ed] with an opinion from a medical source," to "explain why the opinion was not adopted," SSR 96-8p, *Assessing Residual Functional Capacity in Initial Claims*, 61 Fed. Reg. 34474, 34478 (July 2, 1996). Although her brief does not mention SSR 96-8p, Ms. Cardenas effectively argues that the ALJ erred under SSR 96-8p because: (1) Dr. Tovar's opined limitation to 1-2 step instructions conflicts with the ALJ's adopted limitation to simple instructions; and (2) the ALJ failed to adequately "explain why the opinion was not adopted." *Id.*

The answer to the first question—whether a limitation to "1-2 step instructions" conflicts with a limitation to "simple instructions" as contemplated in SSR 96-8p—is not clear cut. As Ms. Cardenas acknowledges, "[c]ases in the Sixth Circuit do not provide much clarity as to the distinction between simple instructions and 1-2 step instructions, with some supporting the view that the two concepts are distinct, and other cases suggesting that the terms are interchangeable."

[2] The Sixth Circuit has long recognized that an ALJ is "not required to recite the medical opinion of a physician verbatim in [her] residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009); *see* 20 C.F.R. §§ 416.945(a)(1), 416.946(c). Indeed, the circuit has "rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ." *See Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) (citing *Shepard v. Comm'r of Soc. Sec.,* 705 F. App'x 435, 442–43 (6th Cir. 2017); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013)).

(ECF Doc. 9, p. 11 (citations omitted).) For example, one district court recently found a change from "simple, 1 to 2-step tasks" to "simple tasks over two-hour segments" merely revised "mental-limitations language without changing the substance." *Dishman v. Bisignano*, No. 6:25-CV-77-HAI, 2025 WL 3187506, at *5-*8 (E.D. Ky. Nov. 14, 2025). In another example, the undersigned found a "conflict" as contemplated in SSR 96-8p when a medical opinion limited an individual to "one to two step" and "simple, routine, repetitive" tasks but the ALJ adopted an RFC limiting the individual to "routine tasks with detailed but uninvolved instructions." *Murray v. Comm'r of Soc. Sec.*, No. 5:24-CV-00639, 2025 WL 841084, at *15-*16 (N.D. Ohio Mar. 18, 2025), *report and recommendation adopted sub nom. Murray v. Bisignano*, No. 5:24CV00639, 2025 WL 2249590 (N.D. Ohio Aug. 7, 2025).

Rather than taking a position as to whether there is a conflict between "1-2 step" and "simple" instructions as contemplated in SSR 96-8p, the Commissioner addresses the second SSR 96-8p consideration: whether the ALJ adequately explained why the relevant limitations were not adopted. According to the Commissioner, "the ALJ's intention is clear if the decision is read as a whole" since "the decision as a whole indicates that the ALJ did not accept the limitation to 1-2 step tasks even if the ALJ did not expressly state that he rejected that limitation." (ECF Doc. 11, p. 8.) For the reasons explained herein, the Court agrees.

As discussed above, the ALJ explained after discussing Ms. Cardenas's mental health treatment records that she had limited Ms. Cardenas "to only simple instructions and simple decisions" but found "no further mental limitations supported by the evidence of record." (Tr. 39.) The ALJ also explained that she found "the complete evidence of record, including treatment notes, mental status examination findings, and hospitalization records, is consistent the same functional limitations as those noted by [state agency psychological consultant] Dr. Cohen

and further, is consistent with a limitation to simple instructions[.]" (Tr. 41.) It is in the context of these earlier findings that the ALJ acknowledged Dr. Tovar's opinion that Ms. Cardenas could "follow 1-2 step instructions to carry out a task" but concluded that "[a] finding that the claimant is limited to simple instructions is supported by" Dr. Tovar's mental status examination findings and Ms. Cardenas's receipt of special education services, and "consistent with the complete evidence of record including treatment notes and other mental status examination findings." (*Id.* (internal citations omitted).) Thus, reading the ALJ's written decision as a whole, the Court concludes that the ALJ adequately explained why she adopted an RFC limitation to "simple instructions" rather than adopting verbatim the language in Dr. Tovar's opinion.[3]

Ms. Cardenas's citation to the unpublished district court decision in *Green v. Comm'r of Soc. Sec.*, No. 3:20-CV-01623-JGC, 2022 WL 610643 (N.D. Ohio Mar. 2, 2022), does not change this analysis. (*See* ECF Doc. 9, pp. 11-12.) There are several notable distinctions between *Green* and the present case. First, the ALJ in *Green* found the relevant medical opinion, which "included a limitation to 1-2 step tasks," to be "persuasive" before adopting an RFC that did not include the "1-2 step tasks" language. 2022 WL 610643 at *3. Here, the ALJ found Dr. Tovar's opinion to be "only partially persuasive." (Tr. 41.) Second, the court in *Green* observed that "the ALJ did not explain why she included a limitation to simple tasks rather than 1-2 step tasks in the RFC," and that "[t]he Commissioner d[id] not argue otherwise[.]" 2022 WL 610643 at *3. Here, in contrast, the Commissioner argued that "the ALJ's intention [wa]s clear" since "the decision as a whole indicates that the ALJ did not accept the limitation to 1-2 step tasks" (ECF Doc. 11, p. 8), and the Court agrees for the reasons outlined herein. Finally, the *Green*

[3] Because the ALJ adequately explained the reasoning supporting her adoption of an RFC limiting Ms. Cardenas to "simple instructions," this Court need not decide whether there is a conflict between the "1-2 step" instruction language in Dr. Tovar's opinion and the "simple" instruction language in the RFC as contemplated in SSR 96-8p.

court concluded that it was unnecessary to determine whether there was "any distinction between simple tasks and 1-2 step tasks" because the court found that the ALJ did not explain why she deviated from the limitation to 1-2 step tasks and therefore concluded that the ALJ had failed to build a logical bridge between the evidence and her conclusion "because there is an ambiguity surrounding the task-based restriction that the ALJ adopted." 2022 WL 610643 at *4. Here, as discussed above, the Court finds the ALJ adequately explained her reasons for adopting an RFC that limited Ms. Cardenas to "only simple instructions and simple decisions" while finding "no further mental limitations supported by the evidence of record." (Tr. 39; *see also* Tr. 40-41.)

Considering the foregoing, the Court concludes that the ALJ's written analysis of Dr. Tovar's medical opinion, read alongside her analysis of other evidence and opinions at Step Four, was sufficient to create a logical bridge between the evidence and the ALJ's decision to limit Ms. Cardenas to "simple" but not "1-2 step" instructions in the RFC.

Having concluded that the ALJ adequately explained any deviation from Dr. Tovar's "1-2 step instructions limitation," the Court finds Plaintiff's claim that "the ALJ also presented a legally insufficient hypothetical to the vocational expert" because it did not include Dr. Tovar's 1-2 step instructions limitation (ECF Doc. 9, p. 12) is similarly without merit.[4]

For the reasons set forth above, the Court concludes that the ALJ sufficiently explained her findings regarding the opinion of Dr. Tovar, consistent with the requirements of SSR 96-8p,

[4] Because Plaintiff's substantive arguments lack merit, her arguments regarding harmful error need not be addressed herein. (*See* ECF Doc. 9, p. 13.) Nevertheless, it is observed that her assertion that the jobs identified by the VE, all classified at Reasoning Level 2, would not have been available if the ALJ's hypothetical included a limitation to "1-2 step tasks" (*id.*) is not clearly supported by Sixth Circuit law. *See, e.g., Monateri v. Comm'r of Soc. Sec.*, 436 F. App'x 434, 446 (6th Cir. 2011) ("[N]either the Commissioner nor the VE has an obligation to employ the DOT, and there is no precedent that requires the Commissioner to align DOT 'reasoning levels' with RFC classifications[.]"); *Matelski v. Comm'r of Soc. Sec.*, 149 F.3d 1183 (6th Cir. 1998) ("[T]he reasoning development requirements, as well as some other development requirements, are 'merely advisory in nature.'"); *Russell v. Comm'r of Soc. Sec. Admin.*, No. 1:13-CV-291, 2014 WL 1333262, at *15 (N.D. Ohio Mar. 31, 2014) (finding a "limitation to simple one- or two-step instructions . . . is not inconsistent with the ability to perform jobs with reasoning Level 2").

and that Ms. Cardenas has not met her burden to show that the ALJ's medical opinion findings or mental RFC assessment lacked the support of substantial evidence.

## V. Conclusion

For the foregoing reasons, the Court **AFFIRMS** the Commissioner's decision.

August 20, 2026

*/s/Amanda M. Knapp*
AMANDA M. KNAPP
United States Magistrate Judge